IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FRED HEIDARPOUR, individually        *
and on behalf of a class of all persons   *
and entities similarly situated,           *
                                          *
        Plaintiff,                         *
                                          *
v.                                         *   Case No: 4:15-cv-139 (CDL)
                                          *
CENTRAL PAYMENT CO., LLC,        *
                                          *
        Defendant.                        *

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

After over a year and a half of hard-fought litigation with extensive discovery

and discovery related motion practice, plaintiff Fred Heidarpour ("Plaintiff" or "Mr.

Heidarpour") and defendant Central Payment Co., LLC ("Defendant" or "Central

Payment") (jointly "the Parties") in this putative Telephone Consumer Protection

Act class action have reached a proposed settlement.[1]  The settlement establishes a

$6,500,000 Settlement Fund and additionally provides for non-monetary, prospective

relief.

The Parties' proposed settlement is exceedingly fair and well within the range

of preliminary approval for several reasons.  First, it provides certainty for the

---

[1] *See* Settlement Agreement, and the accompanying exhibits, attached hereto as
Exhibit 1 ("The Settlement"). Although Defendant does not oppose Plaintiff's
Motion for purposes of approving the Settlement, it does not endorse Plaintiff's
allegations, nor his recitations of fact or law, and denies all liability in the action.

1

Settlement Class in the face of Defendant's ability and willingness to continue its vigorous defense of the case.  Second, the Settlement was reached only after first engaging in substantial litigation, discovery and discovery related motion practice, dispositive motion practice, and extensive arm's-length mediation with the assistance of the Hon. Morton Denlow, a retired Federal Magistrate Judge experienced in mediating cases brought under the TCPA.  Third, the deal was not conditioned on any set amount of attorneys' fees or incentive award to proposed Class Counsel or Plaintiff, which speaks to the fundamental fairness of the process.

As is described more fully below, Plaintiff respectfully requests that the Court grant her unopposed motion for preliminary approval in its entirety.

## Background

### A. Background and the Telephone Consumer Protection Act

The TCPA prohibits, *inter alia*, initiating any telephone solicitation to a telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry, or calling a cell phone using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. *See* 47 U.S.C. 227 (b) and (c). The National Do Not Call Registry portion of the TCPA's regulations, under 47 C.F.R. § 64.1200(c)(2), prohibits "initiat[ing] any telephone solicitation … to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the Federal Government." A private right of action exists for such violations under 47 U.S.C. § 227(c)(5), which affords consumers injunctive relief and damages.

In his Complaint, Plaintiff alleges that Central Payment violated the TCPA by causing multiple telemarketing calls to be made to phone numbers Plaintiff and others. Central Payment denies that it violated the TCPA, and denies all other allegations of wrongdoing and liability. The Defendant is a corporation that provides payment processing services to over 65,000 business nation-wide and processes over $10 billion in credit card sales annually. *See* https://cpay.com/about (last visited on November 29, 2016). To find new clients Central Payment relies on third parties who solicit new customers via telemarketing, such as Central Payment WI. In 2014, Central Payment WI opened a telemarketing call center, which was fully funded by Central Payment, and proceeded to use automated telemarketing equipment to deliver "cold calls" using pre-recorded messages to consumers nation-wide. A number of these pre-recorded calls were sent to residential telephone lines, including that of the Plaintiff Fred Heidarpour. In addition, Mr. Heidarpour's residential telephone number was listed on the National Do Not Call Registry (the "Registry").

In response to a subpoena to Central Payment WI, the Plaintiff obtained records of more than 27,000,000 attempted pre-recorded telephone calls made by Central Payment WI, including calls to the Plaintiff. These records allow the

Plaintiff to identify members of the proposed class. The Plaintiff has retained Anya Verkhovskaya of AB Data, Ltd. in Milwaukee, Wisconsin as an expert witness to identify class members and to opine as to whether they were called on their residential telephone lines, which was necessary in order to identify putative class members.

### B.  Legal Uncertainty Regarding "On Behalf Of" Liability

From the inception of the action, and throughout the period Plaintiff and his counsel invested their time and money prosecuting these claims, the parties have litigated this case in the shadow of uncertainty regarding the central legal question presented by this case—whether Central Payment, who did not place telemarketing calls to Plaintiff or class members, could be liable for TCPA violations committed by its alleged agents.  Courts have been divided on this issue.[2]

### C.  The Settlement Negotiations

Against this unsettled background, the parties began to explore settlement. The parties and counsel mediated this matter with the Hon. Morton Denlow, Ret. in

---

[2] *Compare Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, 2011 WL 2837435, at *1-3 (N.D. Ill. July 18, 2011) (finding that TCPA liability does not require a party to make a call) *with Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (absence of "on behalf of" language in 47 U.S.C. § 227(b)—unlike Section 227(c)(5)—means the entity whose goods are advertised in a prerecorded message is not liable under the TCPA unless traditional vicarious liability principles are satisfied).

Chicago, Illinois on November 8, 2016. These discussions culminated in the

Settlement Agreement that Plaintiff now moves the Court to preliminarily approve.

### Terms of the Proposed Settlement

**A.  Proposed settlement class**

The proposed settlement would establish a Settlement Class defined as

follows:

> All persons or entities who, at any time from August 18, 2011 through the date of the Settlement Agreement, received one or more of the Covered Calls. "Covered Calls" means a call to a residential or wireless telephone number, made by Korthals, LLC ("Korthals") on behalf of Korthals and/or Central Payment, where the call either (1) utilized a pre-recorded message; or (2) was made through the use of automated dialing equipment; or (3) was made to a telephone number that was registered on the National Do Not Call Registry, where the call described in (1), (2), and/or (3) relates in any way to Central Payment's and/or Korthals' products or services or was intended to generate a sales lead to be delivered to Central Payment and/or Korthals. Covered Calls include calls initiated by Korthals relating in any way to Central Payment's and/or Korthals' business. Covered calls include any such calls, whether or not authorized by, approved by, or known by Central Payment and/or Korthals.

Based on the discovery conducted to date, direct notice will be given to each

settlement class member that an address can be located out of the class members

who received telemarketing calls that the Plaintiff alleges violated the TCPA, which

is more than 310,000 people.

**B.  Settlement fund**

The proposed Settlement would establish a $6,500,000 Settlement Fund that will be used to make class member claimant payments, and pay notice and administration costs (estimated to not exceed $400,000.00), Court-approved attorneys' fees, costs, and expenses, and any Court-approved service payment to Plaintiff Heidarpour.  Authorized claimants are entitled to equal shares of the remainder of the Settlement Fund after payments for notice, administration, attorneys' fees and costs, and Plaintiff's service payments.  If administratively and economically feasible, any proceeds from uncashed checks will be distributed in a second round of checks to those claimants that cashed their checks. Any funds that remain after class members are paid will be distributed through *cy pres* award to an entity approved by the Court.  As *cy pres* designees, Plaintiff proposes the Electronic Privacy Information Center and Defendant proposes the TSYS Center for Cybersecurity at Columbus State University and/or the Center for Financial Services Innovation**.**

**C.  Other Relief Benefitting Class Members**

In addition to economic relief, Central Paymment has agreed to the following change in business practices, designed to ensure that the allegations of the Complaint

in this matter do not recur:

> Central Payment shall, for a period of at least two years from the
> Effective Date, maintain a policy (applicable to Central Payment and
> all of its Independent Sales Agents), of not making telemarketing
> calls promoting Central Payment's products and services using pre-
> recorded messages or knowingly purchasing leads that were
> generated through telemarketing using pre-recorded messages.  In
> addition, for a period of at least two years from the Effective Date,
> Central Payment shall include a provision in the independent
> contractor agreements with respect to all of Central Payment's
> Independent Sales Agents who execute an independent contractor
> agreement after the Effective Date, requiring that they refrain from
> making telemarketing calls promoting Central Payment's products
> and services using pre-recorded messages, or knowingly purchasing
> leads that were generated through telemarketing using pre-recorded
> messages.
>
> These restrictions on the use of pre-recorded messages
> described in this paragraph will include any call using an artificial or
> pre-recorded voice to deliver a message with or without consent, that
> is made for the purpose of marketing Central Payment's products or
> services.  The restriction does not apply to (i) calls made for non-
> solicitation purposes, including, but not limited to, calls for
> appointment scheduling and confirmation, and calls regarding service
> issues or advisories, or (ii) calls made by an Independent Sales Agent
> to market products or services that do not relate to Central Payment.

### D.  Notice and settlement administration

Plaintiff will give notice of the settlement to Settlement Class Members

through a direct notice that will be sent electronically to consumers identified from

the phone logs obtained in this case.  Plaintiff's proposed Claim Form and Direct

Mail Notice are attached to the Stipulation of Settlement.  The notice plan has been

designed by, and, upon the Court's approval, will be executed by a third party

administrator, who will also publish the Long Form Notice attached to the Settlement on a case website identified on the direct postcard notice.

### E. Opt-Out and Objections Procedure

After receiving notice, Settlement Class Members will have at least 60 days from the issuance of notice to exclude themselves from the settlement or object to its approval. The deadlines for filing opt-out requests and objections will be conspicuously listed in the Notice, as well as on the settlement administrator's website. The process for filing exclusions and objections is explained in the Notice. With regard to objections, the Notice informs Settlement Class Members that the Final Approval Hearing will be the only opportunity for them to appear and have their objections heard. The Notice also informs Settlement Class Members who choose to participate in the Settlement that they will be bound by the release.

### F. Release

The release is appropriately tailored to the claims raised in the case. In exchange for settlement benefits, Plaintiff and participating Settlement Class Members will release Central Payment and related parties from any and all claims by the Settlement Class that relate in any way to the pre-recorded telemarketing calls sent from the single agent that made the calls to the Plaintiff. No other calling campaigns done by or on behalf of Central Payment will be released.

## Argument

### A.   The Settlement Falls Well Within the Range of Possible Approval, and Therefore Should Be Preliminarily Approved.

The settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to, and consideration by, the Settlement Class Members. It will provide financial relief to participating Settlement Class Members and will relieve the parties of the burden, uncertainty and risk of continued litigation.

Under Rule 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion."  There is usually an initial presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg & A. Conte, *Newberg on Class Actions* §11.41 (4th ed. 2002).

### B.  The Court Should Certify the Class for Settlement Purposes.

For settlement purposes only, the parties have agreed that the Court may make preliminary findings and enter an order granting provisional certification of the Settlement Class and appoint Plaintiff and his counsel to represent the Class.  "The validity of use of a temporary settlement class is not usually questioned."  Newberg,

*supra*, § 11:22.  The Manual for Complex Litigation, § 21.612, explains the benefits of settlement classes:

> Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. (citation omitted).  Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out. An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

For settlement purposes only, the Settlement Class is submitted for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined in the settlement agreement and also appears above.  As detailed below, the Settlement Class meets all of the applicable certification requirements.

Plaintiff seeks certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Class certification is appropriate when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied.  Fed. R. Civ. P. 23; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).  Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law or fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-

representative and her counsel have and will continue to adequately represent the interests of the class (adequacy).  Fed. R. Civ. P. 23(a); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009).  In this case, the evidence already gathered is more than sufficient to support class certification.

### 1.      The Rule 23(a) Factors Are Met.

#### a.      The Class is sufficiently numerous and joinder is impracticable.

The first requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (*quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir.2004)).  Generally, the numerosity requirement is not met with numbers fewer than 21, but is satisfied when the class comprises 40 or more members.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). In this case, Plaintiff has been able to identify more than 310,000 unique telephone numbers that received calls made to generate leads for Central Payment by Central Payment WI. The numerosity requirement is easily satisfied.

#### b.      The Class shares many common issues of law and fact.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  To meet the commonality requirement, the plaintiff must demonstrate that the proposed class members "have suffered the same injury."  *Wal-Mart Stores, Inc.*

*v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  In other words, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Commonality may be shown when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Dukes*, 131 S. Ct. at 2545, 2556.

Plaintiff has litigated this case so that the most important questions at issue are the common to Plaintiff and all Settlement Class Members, and so that those questions may be decided in broad strokes that apply to all Settlement Class Members. Defendant's alleged violations were the subject of the same business model with respect to each member of the proposed Settlement Class—they all involve autodialed using the same technology to try to generate eventual sales for Central Payment.  Further, the evidence also shows that the calls were transmitted in furtherance of the relationship between the Defendant and third parties. As such, this case presents many common questions applicable to the Settlement Class, including:

- Is Central Payment liable under the TCPA for illegal telemarketing calls transmitted by the telemarketers it hired?
- Did the calls made by Central Payment's agents use an "automatic telephone dialing system or an artificial or prerecorded voice" under Section 227(b)(1)(A) of the TCPA?

12

- Are class members entitled to TCPA statutory damages?

As the Settlement Class Members here have all suffered the same injury and are generally subject to the same defenses, commonality is satisfied.

### c.    The Plaintiffs' claims are typical of the Settlement Class.

Typicality requires that Plaintiff's claims be typical of other class members. Fed. R. Civ. P. 23(a)(3).  "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). The purpose of the typicality requirement is to ensure that "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Commonality and typicality overlap, and a finding of one usually results in a finding of the other. *Id*; *see also Gen. Tel. Co. of Southwest*, 457 U.S. at 158, n. 13 ("The commonality and typicality requirements of Rule 23(a) tend to merge.").

Here, Plaintiff's claims are coextensive with and identical to the claims of the proposed Class Members.  All claims arise out of the same legal theories, as typicality requires.  Plaintiff received the same type of pre-recorded telemarketing

calls to his residential line, and was on the National Do Not Call Registry for over 30 days when she received those calls.  Individualized inquiries are not material to establish the TCPA violations, and are therefore irrelevant to the Rule 23 analysis. Plaintiff's claims under the TCPA arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as the Settlement Class Members.  The typicality requirement is satisfied.

### d.  Plaintiff and his counsel are adequate representatives.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To meet this requirement, the proposed class representative must not have any interests antagonistic to those of the other members of the class, and he or she must be represented by competent counsel.  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiff has no conflicting interests with class members.  In fact, by investigating, filing, and vigorously pursuing this case, the Plaintiff has demonstrated a desire and ability to protect class members' interests.  Plaintiff has elected not to pursue solely his individual claims in this matter, but instead is prosecuting the case on behalf of a class of persons who, like him, have been subjected to unlawful telemarketing. The Plaintiff, *and his entire family*, were deposed in this case and the subject of a number of motions and subpoenas.

Plaintiff's counsel have regularly engaged in major TCPA litigation, and have extensive experience in consumer class action lawsuits.  (Affidavits of Plaintiffs' Counsel are attached as Exhibits 2-5.)  Plaintiff's counsel have been appointed as class counsel in numerous TCPA class actions. They have been appointed as lead or co-lead counsel in many TCPA class actions and have achieved substantial settlement on behalf of the classes they have been appointed to represent, including in federal court in Georgia. *See e.g. Mey v. Interstate National Dealer Services, Inc., et. al.*, Civil Action No. 14-cv-01846 (N.D. Ga. Jan. 28, 2016) (Ross, J.). "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again."  *Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). Accordingly, Plaintiff and his counsel will adequately represent the Settlement Class. The requirements of Rule 23(a) are, therefore, satisfied.

### 2.     The Rule 23(b)(3) factors are met.

A class action may be maintained under Rule 23(b)(3) if all Rule 23(a) requirements are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Pertinent matters include: (1) the class members' interests in individually controlling the prosecution or defense of separate

actions, (2) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (3) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-616 (1997) (addressing predominance and superiority requirements).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 623.

As an initial matter, the difficulties of managing a class action are vitiated by this settlement.  When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620, *quoted in In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Lit.*, 280 F.R.D.at 385; *see also Am. Int'l Grp, Inc.*, 2012 WL 651727, at *4 (quoting *Amchem*, 521 U.S. at 622 ("settlement is a factor in the calculus" in determining whether certification is proper)).  A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem,* 521 U.S. at 615.

In this case the aggregate claims of the class are comprised of calculable statutory damages in amounts that make it uneconomic for individuals to pursue

these claims on their own.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809

(1985).  Many decisions recognize the benefits of class certification in cases

involving small individual recoveries, in the context of consumer cases generally,[3]

and TCPA cases in particular.[4]  The overriding justification for certification of these

claims is compelling, and applies with equal force here:

> Jurists and commentators have long debated the merits of the modern
> class action and the public policies behind Rule 23…It is the view of
> this Court that the instant case highlights one of the strongest
> justifications for the class action device: its regulatory function…A
> statute such as the TCPA, which provides for a relatively small
> recovery for individual violations but is designed to deter conduct
> directed against a large number of individuals, can be effectively
> enforced only if consumers have available a mechanism that makes it
> economically feasible to bring their claims. Without the prospect of a
> class action suit, corporations balancing the costs and benefits of
> violating the TCPA are unlikely to be deterred because individual
> claims will not impose the level of liability that would outweigh the
> potential benefits of violating the statute.

---

[3] *See, e.g., Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) ("Such a
small possible recovery [of approximately $125] would not encourage individuals to
bring suit, thereby making a class action a superior mechanism for adjudicating this
dispute."), *cert denied,* 129 S. Ct. 608 (2008); *Drossin v. National Action Fin. Servs.,
Inc.*, 255 F.R.D. 608, 617 (S.D. Fla. 2009).

[4] Many federal courts have certified TCPA actions.  *See e.g., Agne v. Papa John's
Int'l, Inc.*, No. C10-1139-JCC, 2012 WL 5473719 (W.D. Wash. Nov. 9, 2012);  *Van
Sweden Jewelers, Inc. v. 101 VT, Inc*., No. 1:10-cv-253, 2012 WL 4127824 (W.D.
Mich. Sept. 19, 2012); *Sparkle Hill, Inc. v. Central Payment Mat Corp.*, No. 11-
10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012); *Am. Copper & Brass, Inc. v.
Lake City Indus. Prods*., *Inc.*, 2012 WL 3027953 (W.D. Mich. July 24, 2012);
*Reliable Money Order, Inc. v. McKnight Sales Co., Inc*., 281 F.R.D. 327 (E.D. Wis.
2012); *Silbaugh v. Viking Magazine Servs*., 278 F.R.D. 389 (N.D. Ohio 2012);
*Siding & Insulation Co. v. Combined Ins. Group, Ltd.*, No. 1:11 CV 1062, 2012 WL
1425093 (N.D. Ohio Apr. 23, 2012).

*Bee, Denning, Inc. v. Capital Alliance Group*, 2015 U.S. Dist. LEXIS 129495, 37-38 (S.D. Cal. Sept. 24, 2015); *Knutson v. Schwan's Home Service, Inc.*, 2013 WL 4774763 (S.D.Cal. Sept. 5, 2013) ("Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA, see 47 U.S.C. § 227(b)(3), the Court finds a class action would achieve Plaintiffs' objective better than if class members were required to bring individual actions").  For all these reasons, the class action device is the superior means of resolving this case.

### C.  The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.

After determining that a proposed settlement class is appropriate for certification, courts consider whether the proposed settlement itself warrants preliminary approval. The procedure for review of a proposed class action settlement is a well-established two-step process. Alba & Conte, 4 Newberg on Class Actions, § 11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Id.* (quoting Manual for Complex Litig., § 30.41 (3d ed. 1995)).

Moreover, settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual For Complex Litig. at § 30.42.  Further, there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th

Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998). This is because class action settlements ensure class members a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 (affording "great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation"). Here, there should be no question that the proposed Settlement is "within the range of possible approval." To start, the process used to reach the settlement was exceedingly fair. That is, the proposed Settlement was reached only after over a year and a half of contentious and hard-fought litigation, which included a decision on the Defendant's motion to stay the litigation pending a Supreme Court ruling, multiple discovery decisions, completion of substantial class- and merits-based discovery, numerous third party subpoenas, multiple rounds of discovery requests, the production of tends of thousands of documents by the Defendant and third parties, more than ten depositions, a settlement conferences, and

the briefing of Plaintiff's motion for class certification as well as the Defendant's motion for summary judgment and extensive arm's-length settlement negotiations.

Moreover, the Parties agreed on the terms of the settlement through experienced counsel who—especially given that the Settlement wasn't reached until after discovery was nearly completed—possessed all the information necessary to evaluate the case and reach a fair and reasonable compromise. That information shed further light on the contours of the proposed Class and Defendants' conduct, and ultimately informed the terms of the Settlement now before the Court.

The relief afforded to the Settlement Class further demonstrates the fairness, reasonableness and adequacy of the Settlement. By submitting a short and simple claim form, Settlement Class Members are entitled to a pro rate payment out of the $6,500,000 common fund.  Given the various forms of relief offered under the Settlement, coupled with the robust notice plan (*i.e.*, direct notice via First Class U.S. Mail and the creation of a Settlement Website), Counsel believe that the results achieved are well within the range of possible approval.

For all of these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of approval.  Accordingly, the Court should grant preliminary approval.

### D.  The Notice Should Be Approved in Form and Substance.

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that the notice be reasonably disseminated to those who would be bound by the court's judgment.  Notice is proper as long as the average class member would be able to understand it, *Newberg* § 11:53 at 167, and the substance of the notice describes the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). Further, notice must also explain that settlement class members may enter an appearance through counsel or request to be excluded from the settlement class so as not to be bound by any judgment. *Id.*

The Parties have agreed upon a multi-part notice plan that easily satisfies the notice requirements of both Rule 23 and Due Process. Using the call logs described above, the Settlement Administrator will send direct notice, with an accompanying Claim Form, to each address that can be obtained from the call log database. (*Id*. ¶ 4.2(b).  The notice itself will include instructions for a claim form and also include a hyperlink to the Settlement Website, which serves as the "long-form" notice,

provides access to relevant court documents, and allows Settlement Class Members to electronically submit claim forms online.

Finally, the Settlement Administrator will cause notice of the proposed Settlement to be served, pursuant to 28 U.S.C. § 1715, within ten (10) days after it is filed with the Court, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and other required government officials.  In sum, the proposed methods for providing notice to the Settlement Class fully comport with both Rule 23 and Due Process and should be approved by the Court.

<u>**Conclusion**</u>

The proposed class action settlement is fair, reasonable, and adequate.  For the foregoing reasons, the proposed settlement is well within "the range of possible approval," and should be approved in all respects.

A proposed agreed order is submitted as Exhibit 6 to Plaintiff's Motion.

Respectfully Submitted on behalf of Plaintiff Fred Heidarpour
By his Attorneys,

*/s/ Edward A. Broderick*
Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com

Steven H. Koval
Attorney for Plaintiff
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road, 15 Piedmont Center, Suite 120
Atlanta, GA 30305
Telephone: (404) 513-6651
Facsimile: (404) 549-4654
Steve@KovalFirm.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2016, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will

automatically send notification to all attorneys of record.

*/s/ Edward A. Broderick*